# EXHIBIT 1

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

KELLOGG SALES COMPANY; and DOES 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Harlan Zaback, individually and on behalf of all others similarly situated

| |
|---|
| FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
| **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br>**12/20/2019** at 01:20:31 PM<br>Clerk of the Superior Court<br>By Gen Dieu,Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Diego Hall of Justice<br>330 West Broadway<br>San Diego, CA 92101 | CASE NUMBER:<br>*(Número del Caso):*    37-2019-00067808-CU-BT-CTL |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Eric A. LaGuardia, LaGuardia Law, 402 West Broadway, Suite 800, San Diego, CA, 92101

| DATE: 12/23/2019<br>*(Fecha)* | Clerk, by<br>*(Secretario)*    G. Dieu | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
         ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

1  DEVON K. ROEPCKE (SBN 265708)
   **LAW OFFICES OF DEVON K. ROEPCKE**
2  170 Laurel Street
   San Diego, CA 92101
3  Telephone: (619) 940-5357
   Fax: (619)354-4157
4  droepcke@lawdkr.com

5
   ERIC A. LAGUARDIA (SBN 272791)
6  **LAGUARDIA LAW, APC**
   402 West Broadway, Suite 800
7  San Diego, CA 92101
   Telephone No: (619) 655-4322
8  Fax: (619) 655-4344,
   eal@laguardialaw.com
9

10 Attorneys for Plaintiff HARLAN ZABACK

11

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**12/20/2019** at 01:20:31 PM

Clerk of the Superior Court
By Gen Dieu, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                    **COUNTY OF SAN DIEGO**

13

14 Harlan Zaback, individually and on behalf of        Case No.: 37-2019-00067808-CU-BT-CTL
   all others similarly situated,
15
                                                       CLASS ACTION COMPLAINT FOR:
16              Plaintiff,
       vs.                                             (1)  **Violations of the California Consumers**
17                                                          **Legal Remedies Act, Civil Code § 1750,** *et*
                                                            *seq.*;
18 KELLOGG SALES COMPANY; and  DOES
   1 through 10, inclusive,                            (2)  **Unfair Business Practices, California**
19                                                          **Business & Professions Code §§ 17200,** *et*
               Defendants.                                  *seq.*;
20
                                                       (3)  **Violation of the California False**
21                                                          **Advertising Law, California Business &**
                                                            **Professions Code §§ 17500,** *et seq.*;
22
                                                       (4)  **Quasi Contract (Unjust Enrichment)**
23                                                          **Seeking Restitution**

24                                                     **DEMAND FOR JURY TRIAL**

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Harlan Zaback ("Plaintiff") brings this action on behalf of himself and all others similarly-situated against Kellogg Sales Company ("Kellogg") and alleges, on information and belief, except for information based on personal knowledge, as follows:

## INTRODUCTION

1.      Through false and deceptive packaging and advertising, Defendant intentionally misleads consumers into believing that its product "Bear Naked Granola Fit V'nilla Almond" is made with vanilla flavoring derived exclusively from vanilla beans when the ingredient list reveals otherwise.

2.      At all relevant times, Defendant has packaged, advertised, marketed, distributed, and sold "Bear Naked Granola Fit V'nilla Almond" to consumers via retail stores and online retail platforms throughout the state of California with the misrepresentation that "Bear Naked Granola Fit V'nilla Almond" is made with vanilla flavoring derived exclusively from vanilla beans when the ingredient list reveals otherwise.

3.      Plaintiff and other consumers purchased "Bear Naked Granola Fit V'nilla Almond" because they reasonably believed, based on Defendant's packaging and advertising that "Bear Naked Granola Fit V'nilla Almond" is made with vanilla flavoring derived exclusively from vanilla beans. Had Plaintiff and other consumers known that "Bear Naked Granola Fit V'nilla Almond" is not flavored with flavoring derived exclusively from vanilla beans, they would not have purchased the "Bear Naked Granola Fit V'nilla Almond" or would have paid significantly less for it. As a result, Plaintiff and other consumers have been deceived and have suffered economic injury.

4.      Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased "Bear Naked Granola Fit V'nilla Almond" during the relevant statute of limitations period, for violations of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code section 1750, *et seq.*, California's Unfair Competition Law ("UCL"), California Business & Professions Code section 17200, *et seq.,* California's False Advertising Law ("FAL"), California Business & Professions Code section 17500, *et seq.*, and for common law fraud, intentional misrepresentation, negligent misrepresentation, and unjust

-2-

1   enrichment.

2       5.     Plaintiff seeks to represent a Class (defined *infra* in paragraph 49) (hereinafter,

3   referred to as the "Class").

4       6.     As a result of the unlawful scheme alleged herein, Defendant has been able to

5   overcharge Plaintiff and other consumers for its product, induce purchases that would otherwise

6   not have occurred, and/or obtain wrongful profits. Defendant's misconduct has caused Plaintiff

7   and other consumers to suffer monetary damages. Plaintiff, on behalf himself and other similarly

8   situated consumers, seek damages, restitution, declaratory and injunctive relief, and all other

9   remedies provided by applicable law or this Court deems appropriate.

10   **JURISDICTION AND VENUE**

11       7.     The amount in controversy is sufficient to implicate the general jurisdiction of the

12   Superior Court of San Diego.

13       8.     This Court has subject matter jurisdiction pursuant to California Business and

14   Professions Code, Sections 17203, 17204 and Civil Code, Section 1750.

15       9.     This Court has personal jurisdiction over Defendant because it has continuous and

16   systematic contacts with the state of California, County of San Diego. Plaintiff's claims arise out

17   of Defendant's forum related activities.

18      10.    Venue is proper in this Court pursuant to California Code of Civil Procedure,

19   Sections 395 and 395.5, Business and Professions Code, Sections 17203, 17204, and Civil Code

20   Section 1750 because Defendant conducts substantial business in this County. Venue is also

21   proper because a substantial portion of the misconduct alleged herein occurred in the County of

22   San Diego.

23   **THE PARTIES**

24      11.    Plaintiff Harlan Zaback is an individual that resides in the County of San Diego,

25   California. Mr. Zaback purchased "Bear Naked Granola Fit V'nilla Almond" and in doing so saw

26   and relied upon the representations on the packaging. Specifically, Mr. Zaback saw and relied on

27   the following illustrations and representations on the packaging: use of the word "V'nilla" in the

28   product's name on the front and back of the package; the words "naturally flavored" on front of

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

package immediately below the words "V'nilla Almond"; a vignette of vanilla beans with only the word "Vanilla" below it on the back of package; and the words "natural flavors" in package's ingredient list. Based on these representations, Mr. Zaback believed he was purchasing granola with vanilla flavoring derived exclusively from vanilla beans.

12.     Mr. Zaback would not have purchased "Bear Naked Granola Fit V'nilla Almond" or would have paid significantly less for it had he known that it was not flavored with vanilla flavoring derived exclusively from vanilla beans. Therefore, Mr. Zaback suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and fraudulent practices, as described herein. Despite being misled by Defendant, Mr. Zaback wishes to and is likely to continue purchasing "Bear Naked Granola Fit V'nilla Almond" in the future if it is flavored with vanilla flavoring derived exclusively from vanilla beans. To this day, Mr. Zaback regularly shops at stores where "Bear Naked Granola Fit V'nilla Almond" is sold. On some of these occasions, Mr. Zaback would like to buy the "Bear Naked Granola Fit V'nilla Almond," but has refrained from doing so because he cannot rely with any confidence on Defendant's representations regarding the vanilla flavor of the granola, especially since he was deceived in the past by Defendant. While Mr. Zaback currently believes that "Bear Naked Granola Fit V'nilla Almond," is not flavored with vanilla flavoring derived exclusively from vanilla beans, he lacks personal knowledge as to Defendant's food production practices, which may change over time, leaving room for doubt in his mind as to whether "Bear Naked Granola Fit V'nilla Almond" is flavored with vanilla flavoring derived exclusively from vanilla beans. This uncertainty, coupled with his desire to purchase "Bear Naked Granola Fit V'nilla Almond," is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the false and/or misleading representations alleged herein.

13.     Defendant Kellogg Sales Company is a Delaware corporation with its principal place of business at One Kellogg Square, Battle Creek, Michigan 49016. Defendant is responsible for the production, marketing, and sales of "Bear Naked Granola Fit V'nilla Almond." Kellogg was founded in 1906 and is headquartered in Battle Creek, Michigan. Kellogg is a multi-billion-dollar food company that manufactures, markets, and sells a wide variety of cereals and snack

-4-

1  bars, among other foods. Among these food products, Kellogg distributes, markets, labels, and

2  sells a variety of granola products in various flavors under its "Bare Naked" brand, including

3  "Bear Naked Granola Fit V'nilla Almond" purchased by Plaintiff.

4      14.    Plaintiff is unaware of the names of, and capacities of the defendants sued herein as

5  DOES 1 through 10, inclusive. Plaintiff is informed and believes and upon that basis alleges that

6  each of the defendants sued herein as DOES 1 through 10, inclusive, is responsible in some

7  manner for the wrongs alleged herein and is legally liable to the Plaintiff. Plaintiff will amend this

8  complaint to allege their true names and capacities when such information is ascertained.

9  **FACTUAL ALLEGATIONS**

10  **A. Background**

11      15.    Vanilla is one of the most popular and common ingredients in the world – whether

12  as a primary flavor, a component of another flavor, or for its aroma.[1]

13      16.    Vanilla is also the second most expensive flavoring ingredient after saffron.[2]

14      17.    Because of its versatility, high demand, high value, and the relatively limited

15  supply of vanilla bean crops, vanilla is constantly subject to adulteration, extension, and imitation

16  efforts. For the same reasons, there is strong incentive for bad actors to pass off less expensive and

17  lower quality components as natural *vanillin*[3] derived from the vanilla bean.

18      18.    Tactics used to make consumers believe they are getting a product with only real

19  vanilla include: adding synthetically produced *vinillin* derived from wood pulp, tree bark, coal tar,

20

21

22

23  [1] In 1908, E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed

24  [in the United States] as all other flavors together. *See* "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government

25  Printing Office, 1909) pp.333–42, 333; *see also* "Vanilla: The Cultural History of the World's Most Popular Flavor and Fragrance" Rain, Patricia (2004).

26  [2] "Chemistry of Spices" Parthasarathy, V. A.; Chempakam, Bhageerathy; Zachariah, T.

27  John (2008), p. 2.
[3] "Vanillin" is the primary component of the extract of the vanilla bean but does not have

28  quite the same taste as the much more complex mixture of compounds found in natural vanilla extract.

-5-

1   or anal secretions from beaver castor sacs[4]; "extending" vanilla with various flavoring substances

2   with no connection or resemblance to real vanilla beans; and utilizing Tonka bean extract which is

3   a source of coumarin, a substance banned for use in food in the US since 1954 based on possible

4   safety concerns[5], among others.

5        19.    Section 341 of the Federal Food, Drug, and Cosmetic Act (FFDCA) directs the

6   Food and Drug Administration (FDA) to establish standards for food where necessary to promote

7   honesty and fair dealing in the interest of consumers.[6]

8        20.    The federal food standards, as FDA explains, are intended to "protect consumers

9   from contaminated products and economic fraud" and have served as "a trusted barrier against

10   substandard and fraudulently packaged food since their enactment in the 1938

11   FFDCA." Additionally, the federal food standards help create a "level playing field" environment

12   where competitors cannot cut prices by selling inferior products.[7]

13        21.    Federal food standards allow consumers to trust that a standardized food is actually

14   what it purports to be by establishing explicit specifications for the standardized food. Another

15   important part of a food standard is its assigned common or usual name under which only

16   conforming products may be sold. Once a food has a promulgated standard, only products that

17   comply with the compositional and applicable production requirements of the standard may be

18   marketed under the food standard name. Put differently, a food labeled with the name of the food

19   that is subject to the standard must be composed of the ingredients specified in the applicable

20   standard.

21        22.    FDA established a series of standards of identity specifically for vanilla products

22   promulgated at 21 CFR 169.175 – 169.182 intended to alleviate potential consumer fraud by

23   establishing specific requirements for vanilla extract and other standardized vanilla products. The

24

---

25      [4] Mollie Bloudoff-Indelicato "Beaver Butts Emit Goo Used for Vanilla Flavoring",

26   October 1, 2013, https://www.nationalgeographic.com/news/2013/10/beaver-butt-goo-vanilla-flavoring/#close

27      [5] FDA, 2008. Mexican "vanilla" with coumarin: no bargain. FDA Consumer Health Information at www.fda.gov/consumer.

28      [6] 21 U.S.C.A. § 341.
   [7] FDA, 2007. FDA Consumer Update, "FDA's Standards for High Quality Foods."

1   need for consumers to be protected from fraudulent vanilla flavoring representations is reflected in

2   the fact that vanilla flavorings are the only flavoring materials subject to a federal standard of

3   identity.

4       23.    FDA defines vanilla beans at 21 CFR 169.3(a): "The term vanilla beans means the

5   properly cured and dried fruit pods of *Vanilla planifolia Andrews* and of *Vanilla tahitensis*

6   *Moore*."

7       24.    The standards of identity set out by 21 CFR 169 for identifying vanilla extract and

8   the other standardized vanilla products require standardized vanilla products be derived from

9   "vanilla beans" as defined above under 21 CFR 169.3(a).

10       25.    In addition to Section 341, Section 343 of the FFDCA dictates that a food shall be

11   deemed to be misbranded "[i]f it purports to be or is represented as a food for which a definition

12   and standard of identity has been prescribed by regulations as provided by section 341 of this title,

13   unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food

14   specified in the definition and standard, and, insofar as may be required by such regulations, the

15   common names of optional ingredients (other than spices, flavoring, and coloring) present in such

16   food."[8]

17       26.    Taken together, Sections 341 and 343 dictate where a flavor is represented as

18   "vanilla" and/or tastes like vanilla it is subject to the standards of identity for vanilla flavorings set

19   out by 21 CFR 169.175 – 169.182 and must comply with the labeling requirements for the

20   standards. FDA's implementing regulations follow the legal principle that standards of identity

21   supersede the general flavor labeling regulations because where there "is a flavor for which a

22   standard of identity has been promulgated," then "it shall be labeled as provided in the standard."[9]

23       27.    If a food contains any artificial flavor which resembles or reinforces the characte-

24   rizing flavor, the name of the food on the label should be accompanied by the common or usual

25   name of the characterizing flavor and the word(s) 'artificial' or 'artificially flavored' e.g. 'artificial

26   vanilla,' 'artificially flavored vanilla' or 'vanilla artificially flavored.

27

28       [8] 21 U.S.C.A. § 343.
    [9] 21 C.F.R. § 101.22(g)

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

28.     Even if, for example, Defendant's "Bear Naked Granola Fit V'nilla Almond" (where vanilla is a characterizing flavor) is flavored with a combination that is part vanilla flavor derived exclusively from vanilla beans (like vanilla-extract) along with *vanillin* derived from some other "natural" but non-vanilla bean *vanillin* source (like tree bark), the proper labeling would be the general flavor and food labeling regulations at 21 CFR Section 101.22. In this example, though, the *vanillin* derived from tree bark is characterizing for vanilla and even though it qualifies as "natural flavor" under 21 CFR Section 101.22(a)(3) the labeling for the "Bear Naked Granola Fit V'nilla Almond" on the principal display panel must indicate that its granola contains an "artificial" flavor – the *vanillin* not from vanilla beans; and in such an example the ingredient statement could contain a statement of "natural and artificial flavors."[10] But even if this *is* the case with the vanilla flavor in "Bear Naked Granola Fit V'nilla Almond," Defendant's packaging for "Bear Naked Granola Fit V'nilla Almond" does neither.

**B. Defendant's Packaging and Marketing Are Misleading**

29.     Defendant's "Bear Naked Granola Fit V'nilla Almond," along with the other Bare Naked granola products, is available to consumers nationwide from third-party retailers, including brick and mortar and online stores.

30.     Defendant's packaging and marketing of "Bear Naked Granola Fit V'nilla Almond" is misleading to reasonable consumers, including Plaintiff and other Class members.

31.     Plaintiff purchased "Bear Naked Granola Fit V'nilla Almond" with the belief, based on Defendant's misleading packaging, that it is flavored with vanilla flavoring derived exclusively from vanilla beans when close inspection of the ingredient list reveals otherwise.

32.     A reasonable consumer is misled to believe "Bear Naked Granola Fit V'nilla Almond" is flavored with vanilla flavoring derived exclusively from vanilla beans based on the

---

[10] The FDA has weighed in on this point, specifically, stating that a food containing *vanillin* even produced consistent with the FDA definition of natural flavor "can bear the term 'vanillin,' 'natural flavor,' or 'contains natural flavor' but the term natural flavor must not be used in such a way to imply that it is 'natural vanilla flavor' *because it is not derived from vanilla beans*." *See*: "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States, April 25, 2018 article quoting May 6, 2009 Letter from FDA to a flavor industry member regarding "natural vanillin." (Emphasis added).

-8-

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

following illustrations and representations on Defendant's relevant packaging and advertising:

 (1) use of the word "V'nilla" in the product's name;

 (2) the words "naturally flavored" on front of package immediately below the words

  "V'nilla Almond";



 (3) a vignette of vanilla beans with only the word "Vanilla" below it on the back of

  package;

 (4) the words "natural flavors" in package's ingredient list;



CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

(5) the words "natural vanilla flavor" in the narrative next to the product on the Bear

Naked website;



## V'NILLA ALMOND

**Bear Naked Granola Fit Vnilla Almond.** Not all bears hibernate for the winter. Some like to keep active all year round. These are the fit-minded bears behind V'nilla Almond Fit Granola, with Non-GMO project verified whole grain oats, almonds, and natural vanilla flavor. Perfect for the bear on the go.

## Product Information:

**Allergen Notes:** CONTAINS ALMOND INGREDIENTS. MAY CONTAIN OTHER TREE NUTS.

**Ingredients:** Whole grain oats, brown rice syrup, almonds, cane sugar, oat bran, brown rice, ground flax seeds, natural flavors.



(6) and the narrative under "About Us" on the Bear Naked website, suggesting that their

products are made from the "highest quality foods" without "unfamiliar ingredients,"

and that they keep their granola "good and wholesome."



company picnic is BYOB (bring your own bees). But the truth is, the bears keep us honest. Their instincts always point them to the highest quality foods found in the wild. Newfangled food science and unfamiliar ingredients scare and confuse our bears, turning them from jovial, happy-go-lucky granola makers into the scary bears Hollywood actors wrestle with to win awards. So when we say keeping our granola good and wholesome is in our best interest, we're not just talking about brand image.

-10-

33.     Ingredients: Whole grain oats, brown rice syrup, almonds, dried cane syrup, oat bran, brown rice, **natural flavors**, ground flax seeds. (Emphasis added).

34.     "Bear Naked Granola Fit V'nilla Almond" does not identify vanilla extract or vanilla flavoring as the flavoring source for its vanilla flavor, despite vanilla constituting a "characterizing flavor" based on its packaging, along with "almond."

35.     As explained above, when faced with general and specific regulations, the general rule is to use the specific ones, in this case the specific regulations for vanilla as opposed to general flavoring.

36.     Defendant's listing of "natural flavors" as opposed to vanilla flavor or vanilla extract is tacit acknowledgement that the "natural flavors" is not a synonym for the required vanilla ingredients. *Compare* 21 C.F.R. § 101.22 (natural flavor) *with* 21 C.F.R. § 169.175 (Vanilla extract.) and § 169.177 (Vanilla flavoring.).

37.     Additionally, it would make no sense to use a more expensive and higher quality ingredient (vanilla extract or vanilla flavor) but designate it with a general term that could be perceived by some consumers to cost less money and appearing on most foods in existence ("natural flavors").

38.     In short, the vanilla flavor in "Bear Naked Granola Fit V'nilla Almond" derived from any source other than the vanilla bean must be labeled as an artificial flavor, but it is not.

39.     Nowhere on the packaging does it disclose that the "Bear Naked Granola Fit V'nilla Almond" is flavored with anything other than vanilla flavoring derived exclusively from vanilla beans. Rather, as described above, the packaging uses words and even a picture of vanilla beans to misrepresent to Plaintiff and reasonable consumers that it *is* flavored with vanilla flavoring derived exclusively from vanilla beans.

40.     Through Defendant's packaging and advertising as described herein, Defendant has acknowledged its intent to create the impression that its "Bear Naked Granola Fit V'nilla Almond" is flavored with vanilla flavoring derived exclusively from vanilla beans.

41.     "Bear Naked Granola Fit V'nilla Almond" is misleading because it is marketed as if it is flavored with vanilla flavoring derived exclusively from vanilla beans (when it is not) next

-11-

1  to other granola products marketed similarly but that actually are flavored with vanilla flavoring

2  derived exclusively from vanilla beans.

3       42.    Where two similarly labeled products are situated in the same category or section

4  of a store and their representations as to quality are identical, yet one is lacking the quantity of the

5  characterizing ingredient (vanilla) or qualities, the reasonable consumer will be deceived.

6       43.    Accordingly, a reasonable consumer will and does pay more money for the

7  misleading labeled product under the false impression that it contains the equivalent amount

8  and/or type of the characterizing ingredients and possesses such qualities.

9       44.    The proportion of this characterizing component, vanilla, has a material bearing on

10  price or consumer acceptance of the product because it is more expensive and desired by

11  consumers.

12       45.    Had Plaintiff and Class members known the truth about "Bear Naked Granola Fit

13  V'nilla Almond," they would not have purchased it or would have paid less for it.

14       46.    As a result of its misleading business practice, and the harm caused to Plaintiff and

15  other consumers, Defendant should be enjoined from deceptively representing that "Bear Naked

16  Granola Fit V'nilla Almond" is made with vanilla flavoring derived exclusively from vanilla

17  beans. Furthermore, Defendant should be required to pay for all damages caused to misled

18  consumers, including Plaintiff.

19       47.    Despite being misled by Defendant, Plaintiff wishes to and is likely to continue

20  purchasing "Bear Naked Granola Fit V'nilla Almond" in the future if it is made with vanilla

21  flavoring derived exclusively from vanilla beans. To this day, Plaintiff regularly shops at stores

22  where "Bear Naked Granola Fit V'nilla Almond" is sold. On some of these occasions, Plaintiff

23  would like to buy the "Bear Naked Granola Fit V'nilla Almond," but refrains from doing so

24  because he cannot rely with any confidence on Defendant's representations regarding the

25  ingredients, especially since he was deceived by Defendant in the past. While Mr. Zaback

26  currently believes that "Bear Naked Granola Fit V'nilla Almond," is not flavored with vanilla

27  flavoring derived exclusively from vanilla beans, he lacks personal knowledge as to Defendant's

28  food production practices, which may change over time, leaving room for doubt in his mind as to

-12-

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   whether "Bear Naked Granola Fit V'nilla Almond" is flavored with vanilla flavoring derived

2   exclusively from vanilla beans. This uncertainty, coupled with his desire to purchase "Bear Naked

3   Granola Fit V'nilla Almond," is an ongoing injury that can and would be rectified by an injunction

4   enjoining Defendant from making the false and/or misleading representations alleged herein.

5                                    **CLASS ACTION ALLEGATIONS**

6          48.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

7          49.   Plaintiff brings this action on behalf of himself and the following ascertainable

8   class of similarly situated persons pursuant to California Civil Code of Procedure section 382:

9          All persons, who are California residents who purchased "Bear Naked Granola Fit V'nilla
10         Almond," or who purchased "Bear Naked Granola Fit V'nilla Almond" within the State of
           California, for personal, family, or household purposes during the relevant statute of
11         limitations periods.

12         50.   Excluded from the Class is the following individuals and/or entities: Defendant and

13   its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any

14   entity in which Defendant has a controlling interest; all individuals who make a timely election to

15   be excluded from this proceeding using the correct protocol for opting out; and all judges assigned

16   to hear any aspect of this litigation, as well as their staff.

17         51.   Plaintiff reserves the right to amend the above class and to add additional classes

18   and subclasses as appropriate based on investigation, discovery, and the specific theories of

19   liability.

20         52.   Plaintiff is a member of the Class.

21         53.   Members of the Class are so numerous that their individual joinder herein is

22   impracticable. On information and belief, members of the Class number in at least the thousands.

23   The precise number of Class members and their identities is unknown to Plaintiff at this time but

24   will be determined through discovery. Class members may be notified of the pendency of this

25   action by mail and/or publication through the distribution records of Defendant and third party

26   retailers and vendors.

27         54.   Defendant's conduct has imposed a common injury on the members of the Class.

28   Defendant has acted, and refused to act, on ground generally applicable to the Class, which makes

-13-

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  final injunctive relief with respect to each claim as a whole appropriate.

2      55.    The representative Plaintiff will faithfully represent the class and the claims of

3  Plaintiff is typical of the claims of the Class, because Plaintiff and all members of the Class

4  sustained damages that arise out of the same pattern and practice of wrongful conduct by the

5  Defendant, in violation of law as alleged herein.

6      56.    Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiff has

7  retained counsel highly experienced in handling class action litigation, including that which

8  involves consumer protection from unfair business practices, and Plaintiff intends to prosecute this

9  action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

10     57.    The class mechanism is superior to other available means for the fair and efficient

11  adjudication of the claims of Plaintiff and Class members. Each individual Class member may

12  lack the resources to undergo the burden and expense of individual prosecution of the complex

13  and extensive litigation necessary to establish Defendant's liability. Individualized litigation

14  increases the delay and expense to all parties and multiplies the burden on the judicial system

15  presented by the complex legal and factual issues of this case. Individualized litigation also

16  presents a potential for inconsistent or contradictory judgments. In contrast, the class action device

17  presents far fewer management difficulties and provides the benefits of single adjudication,

18  economy of scale, and comprehensive supervision by a single court on the issue of Defendant's

19  liability. Class treatment of the liability issues will ensure that all claims and claimants are before

20  this Court for consistent adjudication of the liability issues.

21     58.    There is a well-defined community of interest in the questions and answers of law

22  and fact involved affecting the members of the Class.  The questions and answers of law and fact

23  common to the Class predominate over questions and answers affecting only individual class

24  members, and include, but are not limited to, the following:

25         a.    Whether Defendant misrepresented material facts and/or failed to disclose material

26               facts in connection with the packaging, marketing, distribution, and sale of "Bear

27               Naked Granola Fit V'nilla Almond";

28         b.    Whether Defendant's use of false or deceptive packaging and advertising

-14-

1    constituted false or deceptive advertising;

2        c.    Whether Defendant engaged in unfair, unlawful and/or fraudulent business

3            practices;

4        d.    Whether Defendant's unlawful conduct, as alleged herein, was intentional and

5            knowing;

6        e.    Whether Plaintiff and the Class are entitled to damages and/or restitution, and in

7            what amount;

8        f.    Whether Defendant is likely to continue using false, misleading or unlawful

9            conduct such that an injunction is necessary; and

10        g.    Whether Plaintiff and the Class are entitled to an award of reasonable attorneys'

11            fees, interest, and costs of suit.

12        59.    Plaintiff knows of no difficulty likely to be encountered in the management of this

13    litigation that would preclude its maintenance as a class action. Because the action is brought as a

14    California class action, the court need only apply a single set of California laws as they relate to

15    Defendant's contract, practices, and conduct.

16                    **CAUSES OF ACTION**

17

18                    **FIRST CAUSE OF ACTION**
         Violation of California's Consumers Legal Remedies Act ("CLRA"),

19                California Civil Code §§ 1750, *et seq.*

20        60.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

21        61.    Plaintiff brings this claim individually and on behalf of the members of the

22    proposed Class against Defendant.

23        62.    "Bear Naked Granola Fit V'nilla Almond" is a "good" within the meaning of

24    California Civil Code section 1761(a), and the purchases of such "Bear Naked Granola Fit V'nilla

25    Almond" by Plaintiff and members of the Class constitute "transactions" within the meaning of

26    California Civil Code section 1761(e).

27        63.    California Civil Code section 1770(a)(5) prohibits "[r]epresenting that goods or

28    services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities

-15-

1  which they do not have . . . ." By marketing "Bear Naked Granola Fit V'nilla Almond" with its

2  current packaging and advertisements, Defendant has represented and continues to represent that

3  the granola has characteristics (that it is flavored with vanilla flavoring derived exclusively from

4  vanilla beans) which it is not. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

5        64.    California Civil Code section 1770(a)(7) prohibits "[r]espresenting that goods or

6  services are of a particular standard, quality, or grade, or that goods are of a particular style or

7  model, if they are of another." By marketing "Bear Naked Granola Fit V'nilla Almond" with its

8  current packaging and advertisements, Defendant has represented and continues to represent that

9  the granola is of a particular standard, quality, or grade (that it is flavored with vanilla flavoring

10  derived exclusively from vanilla beans) when it is of another (flavored with vanilla flavoring that

11  is not derived exclusively from vanilla beans). Therefore, Defendant has violated section

12  1770(a)(7) of the CLRA.

13        65.    California Civil Code section 1770(a)(9) prohibits "[a]dvertising goods or services

14  with intent not to sell them as advertised." By packaging and marketing "Bear Naked Granola Fit

15  V'nilla Almond" with words, statements, and pictures so that a reasonable consumer would

16  believe that the granola is flavored with vanilla flavoring derived exclusively from vanilla beans,

17  and then intentionally not selling the granola as granola flavored with something other than vanilla

18  flavoring derived exclusively from vanilla beans, Defendant has violated section 1770(a)(9) of the

19  CLRA.

20        66.    At all relevant times, Defendant has known or reasonably should have known that

21  "Bear Naked Granola Fit V'nilla Almond" was not flavored with vanilla flavoring derived

22  exclusively from vanilla beans, but instead flavored with something other than vanilla flavoring

23  derived exclusively from vanilla beans, and that Plaintiff and other members of the Class would

24  reasonably and justifiably rely on the packaging and other advertisements in purchasing the

25  granola.

26        67.    Plaintiff and members of the Class have reasonably and justifiably relied on

27  Defendant's misleading, and fraudulent conduct when purchasing "Bear Naked Granola Fit

28  V'nilla Almond." Moreover, based on the materiality of Defendant's fraudulent and misleading

-16-

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   conduct, reliance on such conduct as a material reason for the decision to purchase the granola

2   may be presumed or inferred for Plaintiff and members of the Class.

3       68.     Plaintiff and members of the Class have suffered and continue to suffer injuries

4   caused by Defendant because they would not have purchased "Bear Naked Granola Fit V'nilla

5   Almond" or would have paid significantly less for "Bear Naked Granola Fit V'nilla Almond" had

6   they known that Defendant's conduct was misleading and fraudulent.

7       69.     Under California Civil Code section 1780(a), Plaintiff and members of the Class

8   are seeking injunctive relief pursuant to the CLRA, preventing Defendant from further wrongful

9   acts and unfair and unlawful business practices, as well as restitution, disgorgement of profits, and

10   any other relief this Court deems proper.

11       70.     Pursuant to California Civil Code section 1782, on December 5, 2019 Plaintiff

12   notified Defendant in writing by certified mail of the violations of Section 1770 of the Act and

13   demanded that Defendant rectify the problems associated with the actions detailed above and to

14   give notice to all affected consumers of its intent to so act. Plaintiff sent this notice by certified

15   mail, return receipt requested, to Defendant's principal place of business.

16       71.     Pursuant to California Civil Code section 1782(d), Plaintiff and the Class seek a

17   Court order enjoining the above-described wrongful acts and practices.

18       72.     Plaintiff has incurred attorneys' fees and costs in connection with the investigation

19   and filing of this complaint and anticipates incurring additional attorneys' fees and costs in

20   connection with the prosecution of this action. An award of attorneys' fees is, therefore,

21   appropriate pursuant to, among other grounds, California Civil Code section 1780(d):

22       73.     Plaintiff has suffered and will continue to suffer damages because of the violations

23   discussed herein. The time for Defendant to respond to the letter referred to in the preceding

24   paragraphs has not yet passed. When it does, Plaintiff will amend this complaint to seek, on behalf

25   of himself and the Class, compensatory, punitive, and all other available damages.

26       74.     In all, the injuries suffered by Plaintiff and/or members of the Class as a direct

27   result of Defendant's acts include:

28            a.    Purchases made in reliance on the false representations made by Defendant; and

b. Money spent, that would otherwise not have been spent, had Plaintiff and the California Class known of the actual quality of the goods they were purchasing.

**SECOND CAUSE OF ACTION**
Violation of California's Unfair Competition Law ("UCL"),
California Business & Professions Code §§ 17200, *et seq.*

75.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

76.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant. Business and Professions Code section 17200 provides in pertinent part that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

77.     Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

78.     Defendant's false and misleading advertising of "Bear Naked Granola Fit V'nilla Almond" therefore was and continues to be "unlawful" because it violates the CLRA, California's False Advertising Law ("FAL"), and other applicable laws as described herein.

79.     As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff, and members of the Class.

80.     Under the UCL, a business act or practice is "unfair" if the defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

81.     Defendant's conduct was and continues to be of no benefit to purchasers of "Bear Naked Granola Fit V'nilla Almond," as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the granola's packaging and marketing. Creating consumer confusion as to the actual ingredients and the characteristics of the granola is of no benefit to consumers. Therefore, Defendant's conduct was and continues to be "unfair."

82.     As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff, and members of the Class.

-18-

1   83.   Under the UCL, a business act or practice is "fraudulent" if it actually deceives or

2   is likely to deceive members of the consuming public.

3   84.   Defendant's conduct here was and continues to be fraudulent because it has the

4   effect of deceiving consumers into believing that "Bear Naked Granola Fit V'nilla Almond" is

5   flavored with vanilla flavoring derived exclusively from vanilla beans, when it is not. Because

6   Defendant misled Plaintiff and the Class, Defendant's conduct was "fraudulent."

7   85.   As a result of Defendant's fraudulent business acts and practices, Defendant has

8   and continues to fraudulently obtain money from Plaintiff, and members of the Class.

9   86.   Plaintiff requests that this Court cause Defendant to restore this unlawfully,

10   unfairly, and fraudulently obtained money to Plaintiff, and members of the Class, to disgorge the

11   profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or

12   violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff, and

13   members of the Class, may be irreparably harmed and/or denied an effective and complete remedy

14   if such an order is not granted.

15

16   **THIRD CAUSE OF ACTION**
Violation of California's False Advertising Law ("FAL"),

17   California Business & Professions Code §§ 17500, *et seq*

18   87.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

19   88.   Plaintiff brings this claim individually and on behalf of the members of the

20   proposed Calass against Defendant.

21   89.   California's FAL makes it "unlawful for any person to make or disseminate or

22   cause to be made or disseminated before the public . . . in any advertising device . . . or in any

23   other manner or means whatever, including over the Internet, any statement, concerning . . .

24   personal property or services professional or otherwise, or performance or disposition thereof,

25   which is untrue or misleading and which is known, or which by the exercise of reasonable care

26   should be known, to be untrue or misleading."

27   90.   Defendant has represented and continues to represent to the public, including

28   Plaintiff and members of the Class, through Defendant's deceptive packaging and marketing, that

-19-

"Bear Naked Granola Fit V'nilla Almond" was flavored with vanilla flavoring derived exclusively from vanilla beans. Defendant's representations are misleading because "Bear Naked Granola Fit V'nilla Almond" was not flavored with vanilla flavoring derived exclusively from vanilla beans. Because Defendant has disseminated misleading information regarding "Bear Naked Granola Fit V'nilla Almond," and Defendant knows, knew, or should have known through the exercise of reasonable care that the representation was and continues to be misleading, Defendant has violated the FAL.

91.     Moreover, Defendant knows, knew or should have known through the exercise of reasonable care that such representation was and continues to be unauthorized and misleading.

92.     As a result of Defendant's false advertising, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the Class.

93.     Plaintiff requests that this Court cause Defendant to restore this fraudulently obtained money to Plaintiff and members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## FOURTH CAUSE OF ACTION
### Quasi Contract/Unjust Enrichment/Restitution

94.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

95.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

96.     Where a defendant has been unjustly conferred a benefit "through mistake, fraud, coercion, or request" the return of that benefit is a remedy sought in "a quasi-contract cause of action." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). When a plaintiff alleges "unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution." *Id.*

97.     As alleged herein, Defendant has intentionally and recklessly made misleading representations to Plaintiff and members of the Class to induce them to purchase "Bear Naked

-20-

Granola Fit V'nilla Almond." Plaintiff and members of the Class have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendant. Plaintiff and members of the Class therefore have been induced by Defendant's misleading and false representations about "Bear Naked Granola Fit V'nilla Almond," and paid for it when they would and/or should not have or paid more money to Defendant for it than they otherwise would and/or should have paid.

98.    Plaintiff and members of the Class have conferred a benefit upon Defendant as Defendant has retained monies paid to them by Plaintiff and members of the Class.

99.    The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Class – i.e., Plaintiff and members of the Class did not receive the full value of the benefit conferred upon Defendant.

100.    Accordingly, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon them without paying Plaintiff and the members of the Class back for the difference of the full value of the benefits compared to the value actually received.

101.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Class are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from its deceptive, misleading, and unlawful conduct as alleged herein.

## PRAYER

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully pray for following relief:

1.    Certification of this case as a class action on behalf of the Class defined above, appointment of Plaintiff as Class representative, and appointment of Plaintiff's counsel as Class counsel;

2.    A declaration that Defendant's actions, as described herein, constitute violations as described herein;

3.    An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including, *inter alia*, an order prohibiting Defendant from

1  engaging in the unlawful act described above;

2      4.    An award to Plaintiff and the proposed class of restitution and/or other equitable

3  relief, including, without limitation, restitutionary disgorgement of all profits and unjust

4  enrichment that Defendant obtained from Plaintiff and the proposed class as a result of its

5  unlawful, unfair and fraudulent business practices described herein;

6      5.    An award of all economic, monetary, actual, consequential, and compensatory

7  damages caused by Defendant's conduct;

8      6.    An award of punitive damages;

9      7.    An award to Plaintiff and his counsel of their reasonable expenses and attorneys'

10  fees;

11      8.    An award to Plaintiff and the Class of pre and post-judgment interest, to the extent

12  allowable; and

13      9.    For such further relief that the Court may deem just and proper.

14  **JURY DEMAND**

15  Plaintiff requests a jury on all triable issues.

16

17  DATED: December 20, 2019        **LAGUARDIA LAW, APC**

18          By: _____
        Eric A. LaGuardia

19

20          **LAW OFFICES OF DEVON K. ROEPCKE, PC**

21          Attorneys for Plaintiff

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

## Affidavit of Eric A. LaGuardia for CLRA Count

2      I, Eric A. LaGuardia, am an attorney admitted to practice before this Court and I am

3  counsel of record for Plaintiff in the above-captioned matter. I make this affidavit pursuant to

4  California Civil Code §1780(d). Venue is proper in this District because it is within the county

5  where Plaintiff's transaction at issued in this Complaint occurred. I declare under penalty of

6  perjury under the laws of the United States of America the above is true and correct and of my

7  own personal knowledge.

8

         Dated: December 20, 2019

9                                                     Eric A. LaGuardia

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# EXHIBIT 2

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7070 |

| PLAINTIFF(S) / PETITIONER(S):   Harlan Zaback |
|---|
| DEFENDANT(S) / RESPONDENT(S):  KELLOGG SALES COMPANY |
| |
| ZABACK VS KELLOGG SALES COMPANY [EFILE] |

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE on MANDATORY eFILE CASE | CASE NUMBER:<br>37-2019-00067808-CU-BT-CTL |
|---|---|

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:  Randa Trapp                                           Department: C-70

## COMPLAINT/PETITION FILED: 12/20/2019

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 06/12/2020 | 09:50 am | C-70 | Randa Trapp |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS: Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES: In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

MANDATORY eFILE: Case assigned to mandatory eFile program per CRC 3.400-3.403 and SDSC Rule 2.4.11. All documents must be eFiled at www.onelegal.com. Refer to General Order in re procedures regarding electronically imaged court records, electronic filing, and access to electronic court records in civil and probate cases or guidelines and procedures.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR): THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 37-2019-00067808-CU-BT-CTL      CASE TITLE: Zaback vs Kellogg Sales Company [EFILE]

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
> (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
> (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), _and_
> (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

## Potential Advantages and Disadvantages of ADR
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| Potential Advantages | Potential Disadvantages |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

## Most Common Types of ADR
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:**  A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:**  A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:**  A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

<u>**Local ADR Programs for Civil Cases**</u>

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

<u>On-line mediator search and selection:</u> Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

<u>More information about court-connected ADR</u>: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
   • In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
   • In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

<u>**Legal Representation and Advice**</u>

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 330 West Broadway | |
| MAILING ADDRESS: 330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827 | |
| BRANCH NAME: Central | |

| PLAINTIFF(S): Harlan Zaback |
|---|
| DEFENDANT(S): KELLOGG SALES COMPANY |
| SHORT TITLE: ZABACK VS KELLOGG SALES COMPANY [EFILE] |

| **STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER: 37-2019-00067808-CU-BT-CTL |
|---|---|

Judge: Randa Trapp                                        Department: C-70

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process. Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)                 ☐ Non-binding private arbitration

☐ Mediation (private)                                   ☐ Binding private arbitration

☐ Voluntary settlement conference (private)   ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)                      ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (specify e.g., private mini-trial, private judge, etc.): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____                    Date: _____

_____                _____
Name of Plaintiff                                                  Name of Defendant

_____                _____
Signature                                                              Signature

_____                _____
Name of Plaintiff's Attorney                                 Name of Defendant's Attorney

_____                _____
Signature                                                              Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385. Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated: 12/23/2019

_____
JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 12-10)                    **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**                    Page: 1

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Eric A. LaGuardia, SBN: 272791
402 West Broadway, Suite 800
San Diego, CA 92101

TELEPHONE NO: 619-655-4322   FAX NO: 619-655-4344
ATTORNEY FOR *(Name)*: Harlan Zaback

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, 92101
BRANCH NAME: Hall of Justice

CASE NAME:
Zaback v. Kellogg Sales Company

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**12/20/2019** at 01:20:31 PM

Clerk of the Superior Court
By Gen Dieu, Deputy Clerk

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 37-2019-00067808-CU-BT-CTL |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: Judge Randa Trapp  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☑ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify)*: 1) CLRA; 2) UCL; 3) FAL; 4) Quasi Conract
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 20, 2019
Eric A. LaGuardia
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
  Defamation (e.g., slander, libel) (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

# EXHIBIT 3

1   **JENNER & BLOCK LLP**
2   Kate T. Spelman (Cal. Bar No. 269109)
    kspelman@jenner.com
3   Alexander M. Smith (Cal. Bar No. 295187)
    asmith@jenner.com
4   633 West 5th Street, Suite 3600
    Los Angeles, CA 90071-2054
5   Telephone:  (213) 239-5100
6   Facsimile:        (213) 239-5199

7   **JENNER & BLOCK LLP**
    Dean N. Panos (to apply *pro hac vice*)
8   dpanos@jenner.com
    353 North Clark Street
9   Chicago, IL 60654-3456
    Telephone:  (312) 222-9350
10  Facsimile:        (312) 527-0484

11
    Attorneys for Defendant
12  Kellogg Sales Company

13

14                  UNITED STATES DISTRICT COURT

15                SOUTHERN DISTRICT OF CALIFORNIA

16

17  HARLAN ZABACK, individually and on        Case No. _____
    behalf of all others similarly situated,
18
                                              **DECLARATION OF WINNIE**
19                      Plaintiff,            **EASTWOOD IN SUPPORT OF**
                                              **KELLOGG SALES COMPANY'S**
20          v.                                **NOTICE OF REMOVAL**

21  KELLOGG SALES COMPANY and
    DOES 1 through 10, inclusive,
22
23                      Defendants.
24

25

26

27

28

1    I, Winnie Eastwood, declare and state as follows pursuant to 28 U.S.C. § 1746:

2    1.    I am a Manager, Brand Marketing for the Kellogg Company, which is the

3    parent of Defendant Kellogg Sales Company.  I have personal knowledge of the facts set

4    forth in this declaration, and I could and would testify competently thereto if called on to

5    do so.

6    2.    I understand that this lawsuit involves Bear Naked Granola Fit V'nilla

7    Almond, which is manufactured by Kellogg.

8    3.    Kellogg is not able to track retail sales of their food products, including the

9    granola at issue in this case, because it sells its products to retailers and distributors, who in

10   turn sell those products to retail consumers.  However, Kellogg obtains retail data from

11   Nielsen, which tracks retail sales of Kellogg products through certain retail channels.

12   4.    Nielsen tracks both nationwide and California retail sales of the challenged

13   Bear Naked Granola Fit V'Nilla Almond.  Nielsen's retail sales data reflect that, since

14   January 1, 2016, California sales of Bear Naked Granola Fit V'Nilla Almond amount to

15   approximately ████ million through the retail channels tracked by Nielsen.

16   5.    I understand that the Plaintiff in this case also seeks to enjoin sales of Bear

17   Naked Granola Fit V'nilla Almond in its current packaging.  To comply with such an

18   injunction, Kellogg would need to incur significant costs—including, among other things,

19   the cost of removing the product from retail stores in California, the cost of re-designing

20   the packaging, and the lost sales during the period in which Kellogg was removing the

21   product from the shelves and re-designing the packaging.

22

23   I declare under penalty of perjury under the laws of the United States and the State

24   of California that the foregoing is true and correct to the best of my knowledge.

25   Executed this __ day of February, 2020 in Solana Beach, CA.

26

27   DATED: February 12, 2020        By: _____

28                                            Winnie Eastwood

---

1

DECLARATION OF WINNIE EASTWOOD IN SUPPORT OF KELLOGG'S NOTICE OF REMOVAL

# EXHIBIT 4

1    **JENNER & BLOCK LLP**
Kate T. Spelman (Cal. Bar No. 269109)

2    kspelman@jenner.com
Alexander M. Smith (Cal. Bar No. 295187)

3    asmith@jenner.com
633 West 5th Street, Suite 3600

4    Los Angeles, CA 90071-2054
Telephone:    (213) 239-5100

5    Facsimile:    (213) 239-5199

6

7    Attorneys for Defendant
Kellogg Sales Company

8

9                  SUPERIOR COURT OF CALIFORNIA

10                    COUNTY OF SAN DIEGO

11

12    HARLAN ZABACK, individually and on behalf     Case No. 37-2019-00067808-CU-BT-CTL
of all others similarly situated,

13                                  **NOTICE TO STATE COURT OF REMOVAL**

14               Plaintiff,            **TO FEDERAL COURT**

15       v.

16    KELLOGG SALES COMPANY and DOES 1
through 10, inclusive,

17

18               Defendants.

19

20

21

22

23

24

25

26

27

28

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Defendant Kellogg Sales Company has removed this action to the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1441 *et seq.*  A file-stamped copy of the Notice of Removal is attached as Exhibit 1.


Dated:  February 13, 2020                                      JENNER & BLOCK LLP


                                                              By:  /s/ Kate T. Spelman
                                                                       Kate T. Spelman

                                                              *Attorneys for Defendant*
                                                              Kellogg Sales Company