DEVON K. ROEPCKE (SBN 265708)
**LAW OFFICES OF DEVON K. ROEPCKE**
170 Laurel Street
San Diego, CA 92101
Telephone: (619) 940-5357
Fax: (619)354-4157
droepcke@lawdkr.com

ERIC A. LAGUARDIA (SBN 272791)
**LaGuardia Law, APC**
402 West Broadway, Suite 800
San Diego, CA 92101
Telephone No: (619) 655-4322
Fax: (619) 655-4344,
eal@laguardialaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARLAN ZABACK, individually and on behalf of all others similarly situated;<br><br>                    Plaintiff,<br><br>          vs.<br><br>KELLOGG SALES COMPANY;<br><br>                    Defendant. | Case No.: 3:20-cv-00268-BEN-MSB<br><br>FIRST AMENDED CLASS ACTION COMPLAINT FOR:<br><br>**(1)  Violations of the California Consumers Legal Remedies Act, Civil Code § 1750, *et seq.*;**<br><br>**(2)  Unfair Business Practices, California Business & Professions Code §§ 17200, *et seq.*;**<br><br>**(3)  Violation of the California False Advertising Law, California Business & Professions Code §§ 17500, *et seq.*;**<br><br>**(4)  Quasi Contract (Unjust Enrichment) Seeking Restitution**<br><br>**DEMAND FOR JURY TRIAL** |

-1-

Plaintiff Harlan Zaback ("Plaintiff") brings this action on behalf of himself and all others similarly-situated against Kellogg Sales Company ("Kellogg") and alleges, on information and belief, except for information based on personal knowledge, as follows:

**INTRODUCTION**

1.     Defendant intentionally misleads consumers into believing that its product "Bear Naked Granola Fit V'nilla Almond" (also referred to herein as the "Product") is made with real vanilla derived exclusively from vanilla beans when it is not.

2.     The packaging for "Bear Naked Granola Fit V'nilla Almond," as described and pictured below, includes a pictorial representation of vanilla beans accompanied only by the word, "Vanilla." This is not only misleading but also violates California state and federal regulations on its face.

3.     At all relevant times, Defendant has packaged, advertised, marketed, distributed, and sold "Bear Naked Granola Fit V'nilla Almond" to consumers via retail stores and online retail platforms throughout the continental United States with this deliberate misrepresentation that leads consumers to conclude "Bear Naked Granola Fit V'nilla Almond" contains sufficient real vanilla derived exclusively from vanilla beans to provide the Product's characterizing vanilla flavor when it does not.

4.     Plaintiff and other consumers purchased "Bear Naked Granola Fit V'nilla Almond" because they reasonably believed, based on Defendant's packaging that "Bear Naked Granola Fit V'nilla Almond" is made with sufficient real vanilla derived exclusively from vanilla beans. Had Plaintiff and other consumers known that "Bear Naked Granola Fit V'nilla Almond" is not flavored with sufficient real vanilla derived exclusively from vanilla beans, they would not have purchased the "Bear Naked Granola Fit V'nilla Almond" or would have paid significantly less for it. As a result, Plaintiff and other consumers have been deceived and have suffered

1  economic injury.

2  5. Plaintiff seeks relief in this action individually, and on behalf of all

3  other similarly situated individuals who purchased "Bear Naked Granola Fit V'nilla

4  Almond" during the relevant statute of limitations period, for violations of

5  California's Consumer Legal Remedies Act ("CLRA"), California Civil Code

6  section 1750, *et seq.*, California's Unfair Competition Law ("UCL"), California

7  Business & Professions Code section 17200, *et seq.,* California's False Advertising

8  Law ("FAL"), California Business & Professions Code section 17500, *et seq.*, and

9  unjust enrichment.

10  6. Plaintiff seeks to represent a Class (defined *infra* in paragraph 43)

11  (hereinafter, referred to as the "Class").

12  7. As a result of the unlawful scheme alleged herein, Defendant has been

13  able to overcharge Plaintiff and other consumers of the Product, induce purchases

14  that would otherwise not have occurred, and/or obtain wrongful profits. Defendant's

15  misconduct has caused Plaintiff and other consumers to suffer monetary damages.

16  Plaintiff, on behalf himself and other similarly situated consumers, seek damages,

17  restitution, declaratory and injunctive relief, and all other remedies provided by

18  applicable law or this Court deems appropriate.

19  **THE PARTIES**

20  8. Plaintiff Harlan Zaback is an individual that resides in the County of

21  San Diego, California. Mr. Zaback purchased "Bear Naked Granola Fit V'nilla

22  Almond" and in doing so saw and relied upon the representations on the packaging,

23  including the vignette of vanilla beans with only the word "Vanilla" below it on the

24  back of the package. Based on the packaging, Mr. Zaback believed he was

25  purchasing granola with sufficient real vanilla derived exclusively from vanilla

26  beans sufficient to provide the Product's characterizing vanilla flavor.

27  9. Mr. Zaback would not have purchased "Bear Naked Granola Fit V'nilla

28  Almond" or would have paid significantly less for it had he known that it was not

1  flavored with sufficient real vanilla derived exclusively from vanilla beans. Mr.

2  Zaback wishes to and is likely to purchase "Bear Naked Granola Fit V'nilla

3  Almond" in the future if it is flavored with sufficient real vanilla derived exclusively

4  from vanilla beans.

5      10.    Defendant Kellogg Sales Company is a Delaware corporation with its

6  principal place of business at One Kellogg Square, Battle Creek, Michigan 49016.

7  Defendant is responsible for the production, marketing, and sales of "Bear Naked

8  Granola Fit V'nilla Almond."

9                          **FACTUAL ALLEGATIONS**

10   **A. Background**

11     11.    Vanilla is one of the most popular and well-loved flavoring ingredients

12  in the world.[1]

13     12.    Vanilla is also considered the second most expensive flavoring

14  ingredient after saffron.[2]

15     13.    Because of its versatility, high demand, high value, and the relatively

16  limited supply of vanilla bean crops, vanilla is constantly subject to adulteration,

17  extension, and imitation efforts. For the same reasons, there is strong incentive for

18  bad actors to pass off less expensive and lower quality components as natural vanilla

19  derived from vanilla beans.

20     14.    Some of the tactics used to make consumers believe they are getting a

21  product with only real vanilla include: adding synthetically produced *vanillin*

22

23     [1] In 1908, E. M. Chace, Assistant Chief of the Foods Division of the U.S.

24  Department of Agriculture's Bureau of Chemistry, noted "There is at least three
    times as much vanilla consumed [in the United States] as all other flavors together.

25  *See* "The Manufacture of Flavoring Extracts," Yearbook of the United States

26  Department of Agriculture 1908 (Washington, DC: Government Printing Office,
    1909) pp.333–42, 333; *see also* "Vanilla: The Cultural History of the World's Most

27  Popular Flavor and Fragrance" Rain, Patricia (2004).

28     [2] "Chemistry of Spices" Parthasarathy, V. A.; Chempakam, Bhageerathy;
    Zachariah, T. John (2008), p. 2.

-4-

derived from wood pulp, tree bark, coal tar, or anal secretions from beaver castor sacs[3]; "extending" vanilla with various flavoring substances with no connection or resemblance to real vanilla beans; and utilizing Tonka bean extract which is a source of coumarin, a substance banned for use in food in the US since 1954 based on possible safety concerns[4], among others.

15.     Section 341 of the Federal Food, Drug, and Cosmetic Act (FFDCA) directs the Food and Drug Administration (FDA) to establish standards for food where necessary to promote honesty and fair dealing in the interest of consumers.[5]

16.     The federal food standards, as FDA explains, are intended to "protect consumers from contaminated products and economic fraud" and have served as "a trusted barrier against substandard and fraudulently packaged food since their enactment in the 1938 FFDCA." Additionally, the federal food standards help create a "level playing field" environment where competitors cannot cut prices by selling inferior products.[6]

17.     Federal food standards allow consumers to trust that a standardized food is actually what it purports to be by establishing explicit specifications for the standardized food. Another important part of a food standard is its assigned common or usual name under which only conforming products may be sold. Once a food has a promulgated standard, only products that comply with the compositional and applicable production requirements of the standard may be marketed under the food standard name. Put differently, a food labeled with the name of the food that is

---

[3] Mollie Bloudoff-Indelicato "Beaver Butts Emit Goo Used for Vanilla Flavoring", October 1, 2013, https://www.nationalgeographic.com/news/2013/10/beaver-butt-goo-vanilla-flavoring/#close

[4] FDA, 2008. Mexican "vanilla" with coumarin: no bargain. FDA Consumer Health Information at www.fda.gov/consumer.

[5] 21 U.S.C.A. § 341.

[6] FDA, 2007. FDA Consumer Update, "FDA's Standards for High Quality Foods."

subject to the standard must be composed of the ingredients specified in the applicable standard.

18.    FDA established a series of standards of identity specifically for vanilla products promulgated at 21 CFR 169.175 – 169.182 intended to alleviate potential consumer fraud by establishing specific requirements for vanilla extract and other standardized vanilla products. The need for consumers to be protected from fraudulent vanilla flavoring representations is reflected in the fact that vanilla flavorings are the only flavoring materials subject to a federal standard of identity.

19.    FDA defines vanilla beans at 21 CFR 169.3(a): "The term vanilla beans means the properly cured and dried fruit pods of *Vanilla planifolia Andrews* and of *Vanilla tahitensis Moore*."

20.    The standards of identity set out by 21 CFR 169 for identifying vanilla extract and the other standardized vanilla products require standardized vanilla products be derived from "vanilla beans" as defined above under 21 CFR 169.3(a).

21.    If a food label makes a direct representation with regard to a primary recognizable flavor, that flavor is considered a characterizing flavor. 21 CFR 101.22(i).

22.    If the food is expected to contain a characterizing food ingredient, and the food contains an amount of the actual characterizing flavor that is insufficient to independently characterize the food, and other natural flavor, the name of the characterizing flavor may be preceded by the word "natural" and shall be immediately followed by "flavored." 21 CFR 101.22(i)(1)(i).

23.    Under California's Sherman Law, which incorporates by reference the FDA regulations at 21 CFR 101.22, wherever the name of the characterizing flavor, vanilla, appears on the label (other than in the statement of ingredients) so conspicuously as to be easily seen under customary conditions of purchase, the words ["natural ____ flavor" /"naturally ___ flavored"/"with other natural flavors"] shall immediately and conspicuously precede or follow such name, without any

1  intervening written, printed, or graphic matter. 21 CFR 101.22(i)(3).

2    **B. <u>Defendant's Packaging Is Misleading</u>**

3    24.    Defendant's "Bear Naked Granola Fit V'nilla Almond," along with the

4  other Bare Naked granola products, is available to consumers nationwide from third-

5  party retailers, including brick and mortar and online stores.

6    25.    Defendant's packaging of "Bear Naked Granola Fit V'nilla Almond" is

7  misleading to reasonable consumers, including Plaintiff and other Class members.

8    26.    Plaintiff purchased "Bear Naked Granola Fit V'nilla Almond" with the

9  belief, based on Defendant's misleading packaging, that it is flavored with sufficient

10  real vanilla derived exclusively from vanilla beans when Defendant admits that it is

11  not.

12    27.    A reasonable consumer is misled to believe "Bear Naked Granola Fit

13  V'nilla Almond" is flavored with vanilla flavoring derived exclusively from vanilla

14  beans based on the illustrations and representations on Defendant's relevant

15  packaging, specifically a prominently placed vignette of vanilla beans with only the

16  word "Vanilla" below it on the back of package as pictured below.



FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

28.    Because the Product label displays a clear image of vanilla beans with only the word "Vanilla" below it on the back of package, Mr. Zaback reasonably concluded that the Product contained and was flavored with sufficient actual vanilla derived exclusively from vanilla beans to comply with federal and state regulations and assumed that the Product was accurately labeled and lawful to sell in California.

29.    Defendant has stated that the FDA *requires* it to use the term "naturally flavored" for its Bear Naked granola, acknowledging that the Product is a "vanilla-flavored food containing vanilla flavor derived from vanilla beans and vanilla flavor derived from another natural source" which "shall be labeled in accordance with [101.22(i)(1)(i)]." (internal quotations omitted) Defendant's Memorandum of Points and Authorities in Support of its Motion to Dismiss under FRCP 12(b)(6), Docket No. 7.1 at 11:27-12:11 (emphasis in the original.)

30.    Defendant confirms that the Product does not contain enough vanilla to independently characterize the flavor without the addition of other flavorings derived from other sources.

31.    Immediately following the Product's name "V'nilla Almond", Defendant represents that it is "Naturally Flavored," as it must by law (See 21 CFR 101.22(i)(1)(i) (when a food contains an amount of the actual characterizing flavor that is insufficient to independently characterize the food, and other natural flavor, the name of the characterizing flavor may be preceded by the word "natural" and shall be immediately followed by "flavored.").)

32.    Under California's Sherman Law, which incorporates by reference the FDA regulations at 21 CFR 101.22, under these exact circumstances wherever the name of the characterizing flavor - in this case vanilla - appears on the label (other than in the statement of ingredients) so conspicuously as to be easily seen under customary conditions of purchase, the words ["natural ____ flavor" /"naturally ___ flavored"/"with other natural flavors"] shall immediately and conspicuously precede or follow such name, without any intervening written, printed, or graphic matter. 21

1 | CFR 101.22(i)(3)(iii).

2 |     33.   The packaging for "Bear Naked Granola Fit V'nilla Almond," as
3 | described and pictured above, includes a prominent pictorial representation of
4 | vanilla beans accompanied **only** by the word, "Vanilla." This representation would
5 | only be allowed if the Product contained no other flavor which simulates, resembles
6 | or reinforces the characterizing flavor." See 21 CFR 101.22(i).  However, the
7 | Product does contain other flavors which reinforce the characterizing flavor.

8 |     34.   Accordingly, the product label here violates FDA regulations on its
9 | face as it includes the label statement "Vanilla" without the words "flavor" or
10 | "flavored" as is required by FDA and California-law. See 21 CFR 101.22(i)(3)(iii).

11 |     35.   "Bear Naked Granola Fit V'nilla Almond" is misleading because, as
12 | described above, it is marketed as if it is flavored with real vanilla derived
13 | exclusively from vanilla beans when it is not, next to other granola products
14 | marketed similarly but that actually are flavored with real vanilla derived
15 | exclusively from vanilla beans.

16 |     36.   Where two similarly labeled products' representations as to quality are
17 | identical, yet one is lacking the expected quantity of the characterizing ingredient, in
18 | this case real vanilla, the reasonable consumer will be deceived.

19 |     37.   Accordingly, a reasonable consumer will and does pay more money for
20 | the misleadingly labeled product under the false impression that it contains the
21 | equivalent amount and/or type of the characterizing ingredients and possesses such
22 | qualities.

23 |     38.   The proportion of this characterizing component, vanilla, has a material
24 | bearing on price or consumer acceptance of the product because it is more expensive
25 | and desired by consumers**.**

26 |     39.   Had Plaintiff and Class members known the truth about "Bear Naked
27 | Granola Fit V'nilla Almond," that it does not actually contain a sufficient amount of
28 | real vanilla to independently flavor the granola, they would not have purchased it or

would have paid less for it.

40.    As a result of its misleading business practice, and the harm caused to Plaintiff and other consumers, Defendant should be enjoined from deceptively representing that "Bear Naked Granola Fit V'nilla Almond" is made with vanilla flavoring derived exclusively from vanilla beans. Furthermore, Defendant should be required to pay for all damages caused to misled consumers, including Plaintiff.

41.    Despite being misled by Defendant, Plaintiff wishes to and is likely to purchase "Bear Naked Granola Fit V'nilla Almond" in the future if it is made with vanilla flavoring derived exclusively from vanilla beans. Plaintiff regularly shops at stores where "Bear Naked Granola Fit V'nilla Almond" is sold. On some of these occasions, Plaintiff would like to buy the "Bear Naked Granola Fit V'nilla Almond," but refrains from doing so because he cannot rely with any confidence on Defendant's representations regarding the ingredients, especially since he was deceived by Defendant in the past. While Mr. Zaback currently believes that "Bear Naked Granola Fit V'nilla Almond," is not flavored with vanilla flavoring derived exclusively from vanilla beans, he lacks personal knowledge as to Defendant's food production practices, which may change over time, leaving room for doubt in his mind as to whether "Bear Naked Granola Fit V'nilla Almond" is flavored with vanilla flavoring derived exclusively from vanilla beans. This uncertainty, coupled with his desire to purchase "Bear Naked Granola Fit V'nilla Almond," is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the false and/or misleading representations alleged herein.

## CLASS ACTION ALLEGATIONS

42.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

43.    Plaintiff brings this action on behalf of himself and the following ascertainable class of similarly situated persons pursuant to the Class Action Fairness Act, 28 USC 1332(d) and Rule 23 of the Federal Rules of Civil Procedure:

All persons, who are California residents who purchased "Bear Naked Granola Fit V'nilla Almond," or who purchased "Bear Naked Granola Fit V'nilla Almond" within the State of California, for personal, family, or household purposes during the relevant statute of limitations periods.

44.    Excluded from the Class are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their staff.

45.    Plaintiff reserves the right to amend the above class and to add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

46.    Plaintiff is a member of the Class.

47.    Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in at least the thousands. The precise number of Class members and their identities is unknown to Plaintiff at this time but will be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

48.    Defendant's conduct has imposed a common injury on the members of the Class. Defendant has acted, and refused to act, on ground generally applicable to the Class, which makes final injunctive relief with respect to each claim as a whole appropriate.

49.    The representative Plaintiff will faithfully represent the class and the claims of Plaintiff are typical of the claims of the Class because Plaintiff and all members of the Class sustained damages that arise out of the same pattern and practice of wrongful conduct by the Defendant, in violation of law as alleged herein.

50.    Plaintiff will fairly and adequately protect the interests of the Class.

Plaintiff has retained counsel highly experienced in handling class action litigation, including that which involves consumer protection from unfair business practices, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

51. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

52. There is a well-defined community of interest in the questions and answers of law and fact involved affecting the members of the Class. The questions and answers of law and fact common to the Class predominate over questions and answers affecting only individual class members, and include, but are not limited to, the following:

a. Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, distribution, and sale of "Bear Naked Granola Fit V'nilla Almond";

b. Whether Defendant's use of false or deceptive packaging constituted false or deceptive advertising;

c. Whether Defendant engaged in unfair, unlawful and/or fraudulent

1    business practices;

2    d.    Whether Defendant's unlawful conduct, as alleged herein, was

3          intentional and knowing;

4    e.    Whether Plaintiff and the Class are entitled to damages and/or

5          restitution, and in what amount;

6    f.    Whether Defendant is likely to continue using false, misleading, or

7          unlawful conduct such that an injunction is necessary; and

8    g.    Whether Plaintiff and the Class are entitled to an award of reasonable

9          attorneys' fees, interest, and costs of suit.

10   53.    Plaintiff knows of no difficulty likely to be encountered in the

11   management of this litigation that would preclude its maintenance as a class action.

12   Because the action is brought as a California class action, the court need only apply

13   a single set of California laws as they relate to Defendant's contract, practices, and

14   conduct.

15

16   ## CAUSES OF ACTION

17   ### FIRST CAUSE OF ACTION
     Violation of California's Consumers Legal Remedies Act ("CLRA"),
18   California Civil Code §§ 1750, *et seq*.

19

20   54.    Plaintiff re-alleges and incorporates by reference all preceding

21   paragraphs.

22   55.    Plaintiff brings this claim individually and on behalf of the members of

23   the proposed Class against Defendant.

24   56.    "Bear Naked Granola Fit V'nilla Almond" is a "good" within the

25   meaning of California Civil Code section 1761(a), and the purchases of such "Bear

26   Naked Granola Fit V'nilla Almond" by Plaintiff and members of the Class

27   constitute "transactions" within the meaning of California Civil Code section

28   1761(e).

57. California Civil Code section 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By marketing "Bear Naked Granola Fit V'nilla Almond" with its current packaging, Defendant has represented and continues to represent that the granola has characteristics (that it contains a sufficient amount real vanilla to independently flavor the granola) which it does not. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

58. California Civil Code section 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing "Bear Naked Granola Fit V'nilla Almond" with its current packaging, Defendant has represented and continues to represent that the granola is of a particular standard, quality, or grade -- that it contains a sufficient amount real vanilla to independently flavor the granola-- when it is of another: without the addition of other flavors to resemble and reinforce the vanilla flavoring it would not taste like vanilla. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

59. California Civil Code section 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By packaging "Bear Naked Granola Fit V'nilla Almond" with words and pictures so that a reasonable consumer would believe that the granola is independently flavored exclusively with real vanilla, and then intentionally selling the granola as granola flavored with something other than vanilla flavoring derived exclusively from vanilla beans, Defendant has violated section 1770(a)(9) of the CLRA.

60. At all relevant times, Defendant has known or reasonably should have known that the flavor of "Bear Naked Granola Fit V'nilla Almond" is not independently characterized by real vanilla, but instead relies on other flavors that resemble or reinforce the characterizing flavor, and that Plaintiff and other members of the Class would reasonably and justifiably rely on the packaging in purchasing

the granola.

61.   Plaintiff and members of the Class have reasonably and justifiably relied on Defendant's misleading, and fraudulent conduct when purchasing "Bear Naked Granola Fit V'nilla Almond." Moreover, based on the materiality of Defendant's fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the granola may be presumed or inferred for Plaintiff and members of the Class.

62.   Plaintiff and members of the Class have suffered and continue to suffer injuries caused by Defendant because they would not have purchased "Bear Naked Granola Fit V'nilla Almond" or would have paid significantly less for "Bear Naked Granola Fit V'nilla Almond" had they known that Defendant's conduct was misleading and fraudulent.

63.   Under California Civil Code section 1780(a), Plaintiff and members of the Class are seeking injunctive relief pursuant to the CLRA, preventing Defendant from further wrongful acts and unfair and unlawful business practices, as well as restitution, disgorgement of profits, and any other relief this Court deems proper.

64.   Pursuant to California Civil Code section 1782, on July 6, 2020 Plaintiff notified Defendant in writing by certified mail of the violations of Section 1770 of the Act and demanded that Defendant rectify the problems associated with the actions detailed above and to give notice to all affected consumers of its intent to so act. Plaintiff sent this notice by certified mail, return receipt requested, to Defendant, care of its counsel of record in this matter.

65.   Pursuant to California Civil Code section 1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices.

66.   Plaintiff has incurred attorneys' fees and costs in connection with the investigation and filing of this complaint and anticipates incurring additional attorneys' fees and costs in connection with the prosecution of this action. An award of attorneys' fees is, therefore, appropriate pursuant to, among other grounds,

California Civil Code section 1780(d).

67.    Plaintiff has suffered and will continue to suffer damages because of the violations discussed herein. The time for Defendant to respond to the letter referred to in the preceding paragraphs has not yet passed. When it does, Plaintiff will amend this complaint to seek, on behalf of himself and the Class, compensatory, punitive, and all other available damages.

68.    In all, the injuries suffered by Plaintiff and/or members of the Class as a direct result of Defendant's acts include:

    a.  Purchases made in reliance on the false representations made by Defendant; and

    b.  Money spent, that would otherwise not have been spent, had Plaintiff and the California Class known of the actual quality of the goods they were purchasing.

**SECOND CAUSE OF ACTION**
Violation of California's Unfair Competition Law ("UCL"),
California Business & Professions Code §§ 17200, *et seq.*

69.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

70.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant. Business and Professions Code section 17200 provides in pertinent part that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

71.    Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

72.    Defendant's false and misleading advertising of "Bear Naked Granola Fit V'nilla Almond" therefore was and continues to be "unlawful" because it violates the CLRA, California's False Advertising Law ("FAL"), and other

1  applicable laws as described herein.

2      73.   As a result of Defendant's unlawful business acts and practices,

3  Defendant has unlawfully obtained money from Plaintiff, and members of the Class.

4      74.   Under the UCL, a business act or practice is "unfair" if the defendant's

5  conduct is substantially injurious to consumers, offends public policy, and is

6  immoral, unethical, oppressive, and unscrupulous, as the benefits for committing

7  such acts or practices are outweighed by the gravity of the harm to the alleged

8  victims.

9      75.   Defendant's conduct was and continues to be of no benefit to

10 purchasers of "Bear Naked Granola Fit V'nilla Almond," as it is misleading, unfair,

11 unlawful, and is injurious to consumers who rely on the granola's packaging.

12 Creating consumer confusion as to the actual ingredients and the characteristics of

13 the Product is of no benefit to consumers. Therefore, Defendant's conduct was and

14 continues to be "unfair."

15     76.   As a result of Defendant's unfair business acts and practices, Defendant

16 has and continues to unfairly obtain money from Plaintiff, and members of the

17 Class.

18     77.   Under the UCL, a business act or practice is "fraudulent" if it actually

19 deceives or is likely to deceive members of the consuming public.

20     78.   Defendant's conduct here was and continues to be fraudulent because it

21 has the effect of deceiving consumers into believing that "Bear Naked Granola Fit

22 V'nilla Almond" is independently flavored with real vanilla, when it is not. Because

23 Defendant misled Plaintiff and the Class, Defendant's conduct was "fraudulent."

24     79.   As a result of Defendant's fraudulent business acts and practices,

25 Defendant has and continues to fraudulently obtain money from Plaintiff, and

26 members of the Class.

27     80.   Plaintiff requests that this Court cause Defendant to restore this

28 unlawfully, unfairly, and fraudulently obtained money to Plaintiff, and members of

the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff, and members of the Class, may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## THIRD CAUSE OF ACTION
Violation of California's False Advertising Law ("FAL"),
California Business & Professions Code §§ 17500, *et seq*

81.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

82.   Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

83.   California's FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

84.   Defendant has represented and continues to represent to the public, including Plaintiff and members of the Class, through Defendant's deceptive packaging, that "Bear Naked Granola Fit V'nilla Almond" is flavored with real vanilla derived exclusively from vanilla beans when it is not. Because Defendant has disseminated misleading information regarding "Bear Naked Granola Fit V'nilla Almond," and Defendant knows, knew, or should have known through the exercise of reasonable care that the representation was and continues to be misleading, Defendant has violated the FAL.

85.   Moreover, Defendant knows, knew or should have known through the

exercise of reasonable care that such representation was and continues to be unauthorized and misleading.

86. As a result of Defendant's false advertising, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the Class.

87. Plaintiff requests that this Court cause Defendant to restore this fraudulently obtained money to Plaintiff and members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**FOURTH CAUSE OF ACTION**
Quasi Contract/Unjust Enrichment/Restitution

88. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

89. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

90. Where a defendant has been unjustly conferred a benefit "through mistake, fraud, coercion, or request" the return of that benefit is a remedy sought in "a quasi-contract cause of action." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). When a plaintiff alleges "unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Id.*

91. As alleged herein, Defendant has intentionally and recklessly made misleading representations to Plaintiff and members of the Class to induce them to purchase "Bear Naked Granola Fit V'nilla Almond." Plaintiff and members of the Class have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendant. Plaintiff and members of the Class therefore have been induced by Defendant's misleading and false representations about "Bear Naked Granola Fit V'nilla Almond," and paid for it

1  when they otherwise would not have, and/or paid more money to Defendant for it

2  than they otherwise would and/or should have paid.

3       92.   Plaintiff and members of the Class have conferred a benefit upon

4  Defendant as Defendant has retained monies paid to them by Plaintiff and members

5  of the Class.

6       93.   The monies received were obtained under circumstances that were at

7  the expense of Plaintiff and members of the Class – i.e., Plaintiff and members of

8  the Class did not receive the full value of the benefit conferred upon Defendant.

9       94.   Accordingly, it is inequitable and unjust for Defendant to retain the

10  profit, benefit, or compensation conferred upon them without paying Plaintiff and

11  the members of the Class back for the difference of the full value of the benefits

12  compared to the value actually received.

13       95.   As a direct and proximate result of Defendant's unjust enrichment,

14  Plaintiff and members of the Class are entitled to restitution, disgorgement, and/or

15  the imposition of a constructive trust upon all profits, benefits, and other

16  compensation obtained by Defendant from its deceptive, misleading, and unlawful

17  conduct as alleged herein.

18  ## **<u>PRAYER</u>**

19     **WHEREFORE**, Plaintiff, individually and on behalf of the Class,

20  respectfully pray for following relief:

21     1.   Certification of this case as a class action on behalf of the Class defined

22  above, appointment of Plaintiff as Class representative, and appointment of

23  Plaintiff's counsel as Class counsel;

24     2.   A declaration that Defendant's actions, as described herein, constitute

25  violations as described herein;

26     3.   An award of injunctive and other equitable relief as is necessary to

27  protect the interests of Plaintiff and the Class, including, *inter alia*, an order

28  prohibiting Defendant from engaging in the unlawful act described above;

4.       An award to Plaintiff and the proposed class of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the proposed class as a result of its unlawful, unfair and fraudulent business practices described herein;

5.       An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

6.       An award of punitive damages;

7.       An award to Plaintiff and his counsel of their reasonable expenses and attorneys' fees;

8.       An award to Plaintiff and the Class of pre and post-judgment interest, to the extent allowable; and

9.       For such further relief that the Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a jury on all triable issues.

DATED: July 6, 2020                          **LaGuardia Law, APC**

                                        By:  s/Eric LaGuardia
                                             Eric A. LaGuardia

                                        **LAW OFFICES OF DEVON K. ROEPCKE, PC**

                                        Attorneys for Plaintiff

**Affidavit of Eric A. LaGuardia for CLRA Count**

I, Eric A. LaGuardia, am an attorney admitted to practice before this Court and I am counsel of record for Plaintiff in the above-captioned matter. I make this affidavit pursuant to California Civil Code §1780(d). Venue is proper in this District because it is within the county where Plaintiff's transaction at issued in this Complaint occurred. I declare under penalty of perjury under the laws of the United States of America the above is true and correct and of my own personal knowledge.

Dated: July 6, 2020                    s/Eric A. LaGuardia
                                        Eric A. LaGuardia

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF